UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

ROBIN DALE KILGORE PEPPERS,

    Plaintiff,

v.

JULIE LAWSON,

    Defendant.

CAUSE NO. 3:18-CV-833-DRL-MGG

OPINION & ORDER

Robin Dale Kilgore Peppers, proceeding *pro se*, pursues five claims against Warden Lawson as follows:

> A First Amendment claim against Warden Lawson for placing him in administrative segregation in retaliation for him posting a YouTube video about the jail kitchen;
>
> A Fourteenth Amendment claim against Warden Lawson for placing him in administrative segregation without procedural due process;
>
> A Fourteenth Amendment claim against Warden Lawson for providing inadequate medical treatment for his leg infection;
>
> A Fourteenth Amendment claim against Warden Lawson in connection with his placement on suicide watch in September 2018; and
>
> A related claim for injunctive relief for his release from administrative segregation and for proper medical treatment for his leg infection.

Warden Lawson filed a summary judgment motion on all claims, arguing that Mr. Peppers was placed in administrative segregation because he threatened to commit murder against government officials in a YouTube video and that he received adequate medical treatment at the St. Joseph County Jail.

BACKGROUND

In the amended complaint (ECF 9), Mr. Peppers, a pretrial detainee, alleges that he was placed in administrative segregation without notice or a hearing after Warden Lawson saw his YouTube video about the conditions of the kitchen at the St. Joseph County Jail. In administrative segregation, he was

denied visitation, telephone use, proper health care, or time out of his cell. He was assigned to Cell G402 with sewage leaking on the floor and without running water or a working toilet, and correctional staff refused to assist him for three days. On July 30, Mr. Peppers contracted a leg infection. Though he sent several inmate requests for treatment, he did not receive medical attention until August 30, when a physician gave him a bandage, thereafter replaced on a weekly basis. He later received antibiotic medication. He continues to suffer leg pain, which has since spread to his neck, back, and face. On September 20, Peppers was placed on suicide watch for five days, and correctional staff stripped him naked and confiscated his property. He was placed in a room with steel furniture and given only a smock to sleep in. The alleged unsanitary conditions, inadequate medical treatment, and suicide watch procedures were in accordance with Warden Lawson's policies.

In an affidavit (ECF 43-1), Warden Lawson attests that Mr. Peppers arrived at the St. Joseph County Jail on July 25, 2018. He was classified as an extreme caution inmate because he posted videos on YouTube in which he threatened to murder members of the St. Joseph County Police Department as well as judges and politicians. He was placed in administrative segregation to protect jail staff and other inmates from him.

According to jail records (ECF 43-2), Mr. Peppers had regular access to recreational time and the law library, though he was occasionally denied these privileges for lack of compliance with orders or disciplinary reasons. He regularly received medical care, including medication, mental health care, and treatment for a leg infection, and went out on court dates. Before correctional staff moved Mr. Peppers to Cell G402, it had running water, a functioning toilet, and no sewage on the floor. They gave him the opportunity to clean his cell before lockdown, but he refused. After lockdown, Mr. Peppers asked for water, and a nurse provided it. On September 4, 2018, correctional staff saw Mr. Peppers flush his psychiatric medication, and he was placed on suicide watch pending a mental health evaluation. On January 25, 2019, Mr. Peppers was moved out of administrative segregation.

On April 5, 2019, Mr. Peppers notified the court of his release from the St. Joseph County Jail. ECF 29.

## STANDARD

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* In determining whether summary judgment is appropriate, the deciding court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). "However, our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Fitzgerald v. Santoro*, 707 F.3d 725, 730 (7th Cir. 2013) (citing *Harper v. C.R. Eng., Inc.*, 687 F.3d 297, 306 (7th Cir. 2012)).

## ANALYSIS

Mr. Peppers asserts a Fourteenth Amendment procedural due process claim against Warden Lawson for placing him in administrative segregation without notice or a hearing. For procedural due process claims, a plaintiff must show (1) a deprivation of a protected liberty or property interest; and (2) the absence of constitutionally adequate procedural safeguards in connection with the deprivation. *Pro's Sports Bar & Grill, Inc. v. City of Country Club Hills*, 589 F.3d 865, 870 (7th Cir. 2009). "Whether a prisoner has a liberty interest implicated by special confinement relies on whether the confinement imposed an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Hardaway v. Meyerhoff*, 734 F.3d 740, 743 (7th Cir. 2013). "Although relatively short terms

3

of segregation rarely give rise to a prisoner's liberty interest, at least in the absence of exceptionally harsh conditions, such an interest may arise from a long term of confinement combined with atypical and significant hardships." *Id.*

The record reflects Mr. Pepper's unpleasant experience at the St. Joseph County Jail, but it does not suggest that his experience was atypical and significantly more difficult in comparison to the experience of other inmates. Further, Mr. Peppers experienced a relatively short term in administrative segregation of six months. *See Marion v. Columbia Correction Inst.*, 559 F.3d 693, 698 (7th Cir. 2009) ("[S]ix months of segregation is not such an extreme term and, standing alone, would not trigger due process rights."). Because the record does not show that Mr. Peppers suffered disproportionate hardships or a lengthy term of segregation, his right to procedural due process was not implicated. Therefore, the court grants summary judgment with respect to the procedural due process claim.

Mr. Peppers asserts a First Amendment claim against Warden Lawson for subjecting him to administrative segregation in retaliation for his YouTube video on the conditions of the jail kitchen. "To prevail on his First Amendment retaliation claim, [a plaintiff] must show that (1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

The record contains no indication that Warden Lawson was aware of a YouTube video regarding the conditions of the jail kitchen. Instead, it reflects that she assigned him to administrative segregation after determining that he was a security threat based on the YouTube videos that contained threats to murder members of the St. Joseph County Police Department and various government

4

officials. "[T]hreats of violence are outside the First Amendment." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 388 (1992). "True threats encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359–60 (2003). "The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats protects individuals from the fear of violence and from the disruption that fear engenders in addition to protecting people from the possibility that the threatened violence will occur." *Id.* The threatening YouTube videos are true threats and are thus not speech that is protected by the First Amendment. The court grants summary judgment with respect to the First Amendment claim.

Though the record is disputed regarding the details of Mr. Peppers' medical treatment and the condition of his cell, there is no indication that Warden Lawson was personally involved with the treatment of his leg infection, his placement on suicide watch, his specific cell assignment, or cell maintenance. In Section 1983 cases, "[l]iability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Because the record includes no evidence of personal involvement, the court grants summary judgment with respect to the remaining Fourteenth Amendment claims.

Mr. Peppers asserts a claim for injunctive relief for his release from administrative segregation and for proper medical treatment for his leg infection. Mr. Peppers has notified the court that he no longer resides at the St. Joseph County Jail. ECF 29. Therefore, the court finds that his claim for injunctive relief is moot. *See City of Los Angeles v. Lyons,* 461 U.S. 95, 109 (1983); *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996).

Finally, Mr. Peppers asks for more time "to gather all of the legal codes, law numbers, and Federal and State Codes for the regulation, treatment and housing of Pre-trial detainees and solitary confinement regulations codes." It seems unlikely that a review of applicable administrative codes and

5

regulations would alter the court's ruling on Mr. Peppers' constitutional claims. *See Germano v. Winnebago County, Ill.*, 403 F.3d 926, 929 (7th Cir. 2005) ("[F]ailure to implement state law violates that state law, not the Constitution; the remedy lies in state court."). Further, even if they were relevant, it is unclear why Mr. Peppers did not include them in his response brief or why he has not supplemented his brief during the eight-month pendency of this motion. Because Mr. Peppers has not shown good cause, his request to defer a ruling on the motion for summary judgment is denied.

For these reasons, the court:

(1) GRANTS the motion for summary judgment (ECF 42); and

(2) DIRECTS the clerk to enter judgment in favor of the defendants and to close this case.

SO ORDERED.

August 24, 2020                             *s/ Damon R. Leichty*
                                            Judge, United States District Court